2023 IL App (1st) 211106-U

No. 1-21-1106

Order filed May 1, 2023.

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 10790267 |
| | ) | |
| NICHOLAS BRUNZELLE, | ) | The Honorable |
| | ) | Linzey D. Jones, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE LAVIN delivered the judgment of the court.
Justices Pucinski and Coghlan concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm defendant's conviction for driving under the influence of alcohol over his contentions that (1) the State failed to prove him guilty beyond a reasonable doubt, and (2) the court did not consider all of the evidence.

¶ 2    Following a bench trial, defendant Nicholas Brunzelle was found guilty of driving under the influence of alcohol (DUI) (625 ILCS 5/11-501(a)(2) (West 2018)) and sentenced to 5 days in jail and 24 months' conditional discharge. On appeal, defendant contends that the State did not

present sufficient evidence that he was intoxicated, and the trial court failed to consider evidence favorable to him. We affirm.

¶ 3    Defendant was charged by complaint with one count each of DUI, driving more than 35 miles per hour over the speed limit, improper lane usage, failing to signal when changing lanes, and operating an uninsured motor vehicle.

¶ 4    At trial, Illinois state trooper Stephaun Mosley testified that he had attended the Illinois State Police Academy. There, he trained to detect people driving under the influence of alcohol and to administer the standardized field sobriety tests. Mosley testified that in his experience as a state trooper, he observed people under the influence of alcohol "[h]undreds" of times. The parties stipulated that Mosley was qualified to testify regarding DUI detection.

¶ 5    Prior to Mosley's shift on June 17, 2018, he calibrated his radar unit and determined that it functioned. At approximately 3 a.m., Mosley drove a marked squad car on I-294 and saw a vehicle approaching behind him in the farthest left lane, traveling 105 miles per hour in a 55 miles per hour zone. The vehicle passed Mosley and crossed lane lines "multiple times" without signaling, so he initiated a traffic stop by activating his emergency lights. The vehicle stopped on the right shoulder.

¶ 6    Mosley spoke with the driver, defendant, who provided a temporary driver's license but no proof of insurance. Defendant was wearing shorts with no shirt or shoes. Mosley smelled alcohol on defendant's person and on his breath, and noticed that defendant slurred his speech and had glassy, bloodshot eyes. Defendant stated the smell of alcohol came from empty cans in the vehicle, but Mosley did not see any cans. Mosley asked defendant whether he had consumed alcohol. Defendant initially denied doing so, but eventually admitted that he drank "a couple hours ago."

Based on his observations, Mosley asked defendant to exit the vehicle and perform field sobriety tests. Defendant did not require assistance to exit the vehicle.

¶ 7    First, Mosley administered the horizontal gaze nystagmus (HGN) test, which shows the consumption of alcohol by involuntary jerking of the eyes. Mosley instructed defendant to put his feet together with his arms at his sides, and follow Mosley's finger with his eyes only. Defendant's left and right eyes did not track smoothly, but "jerk[ed]." Mosley did not recall the angle that the nystagmus occurred, but observed both of defendant's eyes "at maximum deviation." A person showing four of the six possible clues in the HGN test establishes consumption of alcohol. Defendant demonstrated all six clues.

¶ 8    Mosley next administered the walk-and-turn test, an "undivided attention test" for impairment. After Mosley instructed defendant, he asserted that he understood. The road surface was clear of debris with no obstacles, and defendant did not wear shoes during the test. Defendant showed five of eight possible clues for impairment, including the inability "to stand at the instructed position" and walk "heel-to-toe on every step," and he did not perform a turn, but "just walked backwards."

¶ 9    Lastly, Mosley administered the one-leg stand test, another "undivided attention test." Defendant showed all four clues of impairment. Based on Mosley's training and experience, he believed defendant was under the influence of alcohol.

¶ 10    After the tests, Mosley arrested defendant and read him the warning to motorists. Mosley placed defendant in the back seat of the police vehicle, and defendant stated that he "had an issue with the Joliet Police Department earlier in the day" and asked why the officers did not arrest him then. He also informed Mosley that he had been "at a hospital." Mosley confirmed that defendant

"had contact" with the Joliet Police Department and had been at a hospital. At the police station, defendant refused a breathalyzer test. Mosley advised defendant of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966).

¶ 11    On cross-examination, Mosley stated that he reviewed footage from the stop prior to writing his report. Mosley agreed there was "virtually no traffic" on I-294 at the time of the incident. When Mosley curbed defendant's vehicle, defendant moved his entire vehicle to the shoulder. Defendant had no issue walking when Mosley requested he exit the vehicle. Defendant's speech was slurred, but Mosley could understand him.

¶ 12    Mosley was approximately 15 inches from defendant during the HGN test; defendant "was swaying," but did not "stumble or fall down." During the walk-and-turn test, defendant took the appropriate number of steps forward and back, but walked "backwards on the second steps" and walked "normally" without touching heel-to-toe. Mosley "believe[d]" that defendant began the test before being instructed to begin. Defendant performed the one-leg stand test on the shoulder in bare feet.

¶ 13    The court questioned Mosely regarding the clues he observed during the one-leg stand test. Mosley responded that defendant "swayed" and used "his arms to balance," "put his foot down," and "hopped."

¶ 14    The State also presented Mosley's dashboard camera video of the entire traffic stop, which contains audio. The video, which is in the record on appeal and has been viewed by this court, depicts a vehicle pass Mosley's squad car at a high speed in the left lane of traffic. The vehicle switches multiple lanes without signaling. Mosely pursues, and eventually curbs the vehicle on the right shoulder of the highway. Mosley exits his vehicle, approaches the vehicle on the passenger

side, and speaks to the driver, defendant, for several minutes, asking for his identification and proof of insurance.

¶ 15    Mosley eventually asks defendant to exit the vehicle and escorts him to an area in front of the camera. Defendant does not wear a shirt or shoes. Mosley asks defendant to place his feet together and his arms at his sides, and follow Mosley's finger with his eyes only. Defendant stands with his back to the camera, and the HGN test is not visible on the video. Mosley then asks defendant if he "has any issues with" his legs and defendant responds, "no." Mosley instructs defendant to "put [his] left foot down" with his right foot in front of it "heel-to-toe." Mosley demonstrates the stance, takes several steps, and informs defendant to take nine "heel-to-toe" steps forward, turn, and then take nine steps in the other direction. Defendant and Mosley's legs are not visible on camera. During the walk-and-turn test, defendant walks nine steps toward the camera, and when Mosley says, "come back in the other direction," defendant walks backward nine steps. Mosley then explains the one-leg stand test and asks defendant to raise his leg, keeping his foot parallel to the ground, and count aloud until Mosley tells him to stop. During the test, defendant loses balance and sways multiple times. Mosley arrests defendant.

¶ 16    Throughout the interaction, defendant denies being intoxicated, states that he consumed alcohol more than three hours earlier, and explains his interaction with the police and at the hospital earlier in the day. Prior to the walk-and-turn test, defendant argues that the road is not "level" and so he does not believe the test is possible. Later, in the police vehicle, defendant informs Mosley that the Joliet police officers placed him in his vehicle and told him to leave Joliet, and asserted that the officers were at fault for letting him drive because he would not have driven had they not escorted him to his vehicle.

¶ 17 Defendant testified that he lived in Gary, Indiana, and on June 16, 2018, drove to Joliet to visit a friend. He arrived at his friend's house at approximately 3 p.m., and drank three beers. At 7 or 8 p.m., defendant walked to a bar, where he ordered two beers. After an hour, he walked to a street festival. At some point, defendant fell asleep and woke in the waiting area of a hospital emergency room. When he exited the waiting room, he observed approximately six Joliet police officers. The officers drove him to his friend's house where his vehicle was parked, and were present when he entered the vehicle. Defendant then drove towards Indiana. Approximately 15 minutes later, Mosley stopped him. Defendant denied ingesting alcohol after he was escorted to his vehicle.

¶ 18 On cross-examination, defendant stated that he weighed 160 pounds at the time of the traffic stop and he drank three 12-ounce cans of beer at his friend's house between 3 and 7:30 p.m. Then, defendant went to the bar and drank two beers in an hour. At approximately 9 p.m., defendant approached the festival, and he agreed that "the next thing you know you wake up in the ER" waiting room. Defendant never learned how he arrived at the hospital. Later, when defendant drove to Indiana, he did not know that the speed limit was 55 miles per hour, but realized that he was speeding. Defendant explained to Mosley that the smell of alcohol might be from empty aluminum cans, which defendant occasionally collects to recycle. Defendant did not recall whether his vehicle contained empty beer cans at the time of the traffic stop, and did not recall informing Mosley that he did not drink that evening.

¶ 19 In closing, defense counsel argued that the Joliet police officers at the hospital who escorted defendant to his vehicle believed he was not under the influence of alcohol, and defendant's actions in curbing his vehicle for Mosley were consistent with not being under the influence of alcohol.

Further, defendant was "frustrated," "agitated," and "upset" due to his experiences that day, but his speech was not slurred in the video and he responded to Mosley's questions. Defense counsel argued that the video showed that defendant was not unbalanced during the HGN test, and the State did not meet its burden to prove that he was intoxicated considering "the totality of the circumstances."

¶ 20    The court found defendant guilty of all charges. In ruling, the court commented that it did not find defendant credible when he testified that he drank three beers at his friend's house, because his memory of that day was "sketchy at best." The court also did not believe defendant's testimony about drinking two beers at the bar. Defendant did not wake upon being transported from the festival to the hospital, which was "not the behavior of a sober person." The court noted that it was not aware whether the Joliet police officers evaluated defendant's sobriety or if they knew he would drive, and commented that it could not "draw any inference from that evidence." Further, defendant's behavior while driving, Mosley's testimony about defendant, and the court's observations of defendant from the video establish that he was intoxicated. In particular, the court found that defendant walking backward during the walk-and-turn test showed "the lack of a sober demeanor."

¶ 21    Defense counsel filed a "motion to reconsider," which the court denied, finding the evidence supported the finding that defendant was intoxicated and thus guilty of DUI.[1] The State then nol-prossed the other charges. After a hearing, the court sentenced defendant on the DUI

---

[1]The record on appeal does not contain the motion, which is not necessary for our disposition of this appeal.

charge to a jail term of 5 days and conditional discharge for 24 months.[2] The court denied defendant's motion to reconsider sentence.

¶ 22    On appeal, defendant first argues that the State failed to establish that he was intoxicated because the State's "only" evidence comprised field sobriety tests which were administered incorrectly.

¶ 23    The standard of review for a challenge to the sufficiency of the evidence is "whether, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Internal quotation marks omitted.) *People v. Belknap*, 2014 IL 117094, ¶ 67. The trier of fact resolves conflicts in the testimony, weighs the evidence, and draws reasonable inferences from basic facts to ultimate facts. *People v. Brown*, 2013 IL 114196, ¶ 48. Accordingly, this court will not substitute its judgment for that of the trier of fact on the weight of the evidence or credibility of witnesses. *Id*. A reviewing court must allow all reasonable inferences from the record in favor of the prosecution (*People v. Cunningham*, 212 Ill. 2d 274, 280 (2004)) and will not reverse a conviction unless the evidence is "unreasonable, improbable, or so unsatisfactory as to justify a reasonable doubt of the defendant's guilt." (Internal quotation marks omitted.) *People v. Jackson*, 232 Ill. 2d 246, 281 (2009).

¶ 24    To sustain defendant's conviction for DUI, the State had to prove beyond a reasonable doubt that he was driving or in the actual physical control of a vehicle while "under the influence of alcohol." 625 ILCS 5/11-501(a)(2) (West 2018). Defendant only challenges the State's evidence that he was under the influence of alcohol.

---

[2]The evidence at the sentencing hearing established that the instant case was defendant's second DUI.

¶ 25    " 'A person is under the influence of alcohol when, as a result of drinking any amount of alcohol, his mental or physical faculties are so impaired as to reduce his ability to think and act with ordinary care.' " *People v. Morris*, 2014 IL App (1st) 130512, ¶ 20 (quoting Illinois Pattern Jury Instructions, Criminal, No. 23.29 (4th ed. 2000)). "To be under the influence of alcohol, a defendant must be under the influence to a degree that renders [him] incapable of driving safely." *People v. Groebe*, 2019 IL App (1st) 180503, ¶ 57. The State is not required to submit scientific proof to establish a defendant's intoxication and may rely solely upon circumstantial evidence. *Id.* ¶ 58. The credible testimony of the arresting police officer alone is sufficient to sustain a DUI conviction. *People v. Elliott*, 337 Ill. App. 3d 275, 281 (2003). Relevant and admissible evidence related to intoxication includes testimony that the defendant's breath smelled of alcohol, or the defendant's eyes were glassy and bloodshot. *Morris*, 2014 IL App (1st) 130512, ¶ 20.

¶ 26    Viewing the evidence in the light most favorable to the State, and allowing all reasonable inferences in favor of the State, a rational trier of fact could find beyond a reasonable doubt that defendant was under the influence of alcohol. The evidence established that Mosley observed defendant driving his vehicle 105 miles per hour in a 55 miles per hour zone and erratically changing lanes. When Mosley curbed defendant, he smelled alcohol on defendant's breath and person. Defendant slurred his speech, his eyes were glassy and bloodshot, and he failed the field sobriety tests. The video corroborates Mosley's testimony that defendant was speeding and driving erratically and failed the field sobriety tests, and shows defendant was argumentative and obstructive. This evidence, taken together, was sufficient to prove defendant guilty of DUI.

¶ 27    Defendant nevertheless argues that the State did not present sufficient evidence that he was under the influence of alcohol, because Mosley did not administer the field sobriety tests correctly.

In support, defendant cites extensively to the National Highway Traffic Safety Association's (NHTSA) manual describing standard procedures and conditions for administering each test.

¶ 28    As an initial matter, the NHTSA manual was not introduced at trial and, therefore, is not in the record on appeal. See *People v. Guerra*, 2020 IL App (1st) 171727, ¶ 28. As the reviewing court, we will not consider matters outside the record on appeal. See *Allstate Insurance Co. v. Kovar*, 363 Ill. App. 3d 493, 499 (2006). Further, "[w]hether a field-sobriety test was performed correctly goes to the test's admissibility." *People v. Eagletail*, 2014 IL App (1st) 130252, ¶ 39. On appeal, defendant does not challenge the admissibility of the evidence regarding the field sobriety tests. Rather, defendant claims that the tests were unreliable because they were performed incorrectly. Defendant's contentions thus attack the weight of the evidence, which is a factual issue for the trial court to resolve. See *People v. Phillips*, 2015 IL App (1st) 131147, ¶ 24 ("[B]ecause [the defendant] does not challenge the admissibility of the HGN test on appeal, but rather its probative value, his challenge goes to the weight accorded to this evidence, which is a factual determination reserved for the trier of fact.").

¶ 29    To that point, defendant further claims that Mosley was not credible because the video directly contradicted his testimony. In particular, defendant contends that Mosley testified that defendant met five clues on the walk-and-turn test, but the video only demonstrates that defendant did not walk heel-to-toe. Despite defendant's characterization, the video does not definitively establish that defendant only displayed one clue. In fact, the video corroborated Mosley's testimony that defendant did not attempt a turn, despite Mosley's instructions. The video is unclear as to the remaining clues, because it does not show defendant's legs and feet during much of the

test. As such, the video does not contradict Mosley's testimony and is not a basis to find him incredible.

¶ 30    Moreover, "it is for the fact finder to judge how flaws in part of the testimony affect the credibility of the whole." *People v. Cunningham*, 212 Ill. 2d 274, 283 (2004). The trier of fact may accept or reject all or part of a witness's testimony. *Id*. The court heard Mosley's testimony, including the purported inconsistencies with the video, and accepted it. Thus, defendant's contention that Mosley was not credible is merely a request for this court to reweigh the evidence and assess Mosley's credibility. We find no reason to disturb the court's credibility determinations. See *Brown*, 2013 IL 114196, ¶ 48.

¶ 31    Defendant also argues that the trial court erred in not considering his interaction with Joliet police officers prior to the traffic stop. Defendant argues that because he spent time with the officers, who allowed him to drive home, "the only reasonable inference" was that the officers believed that he was not intoxicated. Defendant contends that this evidence was "crucial" to the defense, and thus, the trial court erred when, in delivering its findings, it stated it could not "draw any inference" from the evidence related to defendant's interaction with the Joliet police officers.

¶ 32    We disagree. In context, the court commented that it could not "draw any inference" from defendant's interaction with the Joliet police officers in response to defense counsel's argument that the officers believed defendant was not under the influence of alcohol. As the court noted, defendant did not present any evidence that the officers evaluated his sobriety or even whether they knew he was planning to drive. The court, therefore, considered defendant's evidence establishing his interaction with the Joliet police officers and rejected his interpretation of it. As noted, the trial court was in the best position to weigh the evidence and draw reasonable inferences

from it. Again, we will not substitute our judgment for that of the trial court regarding these matters. See *id.*

¶ 33  For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 34  Affirmed.